IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STATE OF DELAWARE DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. No. 09-821-SLR ) |
| UNITED STATES ARMY CORP OF ENGINEERS (USACOE), the HONORABLE JOHN MCHUGH, Secretary of the Army, in his official capacity, the HONORABLE JO-ELLEN DARCY, Assistant Secretary of the Army, in her official capacity, LT. GEN. ROBERT L. VAN ANTWERP, JR., Commander, USACOE, in his official capacity and LT. COL. THOMAS TICKNER, Commander, USACOE, in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Joseph R. Biden, III, Attorney General, Jennifer D. Olivia, Deputy Attorney General, Kevin P. Maloney, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Plaintiff.

Ignacia S. Moreno, Environment and Natural Resources Division, Kent E. Hanson, Environmental Defense Section, and Kristofor R. Swanson, Natural Resources Section, United States Department of Justice, Washington, District of Columbia.  Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: July 15, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

This action follows the decision of the United States Army Corps of Engineers ("the Corps") to proceed with the deepening of the Delaware River pursuant to its Delaware River Main Stem and Channel Deepening Project ("the Deepening Project"). According to the Deepening Project, the Corps will dredge a portion of the Delaware River to deepen the channel from its established depth of forty feet to a depth of forty-five feet from the mouth of the Delaware Bay to the ports of Philadelphia and Camden. In its complaint, the Delaware Department of Natural Resources and Environmental Control ("DNREC") seeks injunctive and declaratory relief, alleging that the Corps' decision to proceed without obtaining the requisite federal and state approval violates numerous provisions of the federal and state regulatory process governing such activities. DNREC seeks to enjoin the Deepening Project until the Corps demonstrates its compliance with all applicable state and federal requirements. (*Id.*)

Currently pending before the court is DNREC's motion to expand the administrative record lodged by the Corps in support of its decision to proceed with the Deepening Project. (D.I. 74) The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346 and 2201. Venue is proper pursuant to 28 U.S.C. § 1391. For the following reasons, the court denies DNREC's motion to expand the administrative record.

## II. BACKGROUND

### A. The Impairment Finding

The court incorporates by reference its previous memorandum opinions (D.I. 61;

D.I. 63), which include a detailed recitation of the facts giving rise to the over-arching dispute. For brevity's sake, the court recounts by way of summary those facts relevant to the motion at bar. The Corps has, until recently, maintained the Delaware River's main navigation channel ("the channel") at a depth of forty feet. In 1983, Congress directed the Corps to evaluate the marked shift towards vessels with deeper drafts, as well as any effects this trend might bear upon the channel's continued viability as a shipping conduit to its ports. Pursuant to this directive, the Corps conducted various studies, finding that contemporary vessel design mandated a channel depth of forty-five feet. (See D.I. 4, ex. A) In response to these findings, Congress authorized the Deepening Project, which would entail the deepening of a 102 mile stretch of the channel to the Corps' recommended depth. See Water Res. Dev. Act of 1992, Pub. L. No. 102-580, § 101(6), 106 Stat. 4797, 4802.

In January 2001, consistent with its obligations under the Clean Water Act ("CWA"),[1] the Corps applied to DNREC for a subaqueous lands and wetlands permit in connection with the Deepening Project ("the application"). (D.I. 33, Decl. of Pasquale at

---

[1] Section 313(a) of the CWA provides that any federal agency

engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants . . . **shall be subject to, and comply with, all Federal, State, interstate, and local requirements**, administrative authority, and process and sanctions **respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity** including the payment of reasonable service charges. The preceding sentence shall apply . . . to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and other requirement, whatsoever) . . . .

33 U.S.C. § 1323(a) (emphasis added).

¶ 8) DNREC hired an independent environmental consultant to conduct a public hearing on December 4 and 5, 2001 regarding the application. (*Id.*) The consultant subsequently found that the Corps' application suffered from several deficiencies. (*Id.*) DNREC received the consultant's recommendation to deny the application in December 2003.[2] (*Id.*)

On December 17, 2008, despite DNREC's failure to render a decision regarding the application, the Corps sought to address the concerns raised by the consultant in an *Environmental Assessment* ("the EA"). (D.I. 4, ex. I) The EA disclosed the Corps' review of environmental information generated since a previous report it made in 1997. (*Id.*) DNREC declined to comment on the EA, citing the short 1 month time frame allotted by the Corps for commentary, and instead proposed that the Corps submit a new application. (*Id.*, ex. J)

On April 30, 2009, the Assistant Secretary of the Army issued a *Memorandum of Record* finding that "the State of Delaware's refusal to provide the subject State permit in a timely and responsible manner would interfere with navigation for the 'upstream states,'" and "has impaired the Secretary of the Army's authority to maintain navigation as specifically directed by Congress in Public Law 102-580, section 101(6)" ("the

---

[2]The Corps sought an interim suspension of the application process due to economic concerns expressed by the General Accounting Office ("GAO") in its audit of the Corps' proposed scheme of achieving Deepening Project. U.S. GEN. ACCOUNTING OFFICE, DELAWARE RIVER DEEPENING PROJECT: COMPREHENSIVE REANALYSIS NEEDED, *available at* http://www.gao.gov/products/GAO-02-604 (last accessed July 9, 2010). This suspension lasted until December 20, 2002, when the Corps submitted an economic reanalysis to DNREC. (D.I. 33, Decl. of Pasquale at ¶ 8)

impairment finding").[3] (D.I. 33, Decl. of Depasquale, ex. 5) The Corps understood the impairment finding to trigger the "navigation exception" found in CWA section 404(t), which exempts the Corps from regulation under the CWA and affiliated state programs. Accordingly, the Corps began soliciting contracts for the labor associated with the Deepening Project notwithstanding the absence of a subaqueous lands and wetlands permit. Three months later, on July 23, 2009, more than five years after the consultant's recommendation, DNREC denied the Corps' 2001 application for Delaware subaqueous lands and wetlands permits. (D.I. 34, ex. I)

## B. Relevant Procedural History

On October 30, 2009, DNREC brought this action to enjoin the Corps from proceeding with the Deepening Project.[4] (D.I. 1) In its complaint, DNREC seeks declaratory and injunctive relief pursuant to, inter alia, the Administrative Procedure Act ("the APA") and alleges that the Corps' decision to proceed violates numerous regulatory provisions governing the Corps' activity including the CWA, the Clean Air Act ("CAA"), the Coastal Zone Management Act ("CZMA"), as well as Title 7, Chapters 72 (Wetlands), 66 (Water Quality) and 60 (Subaqueous Lands) of the Delaware Code. (D.I. 1) On January 27, 2010, the court granted in part and denied in part DNREC's

---

[3]This finding sought to invoke the "navigation exception" found in CWA section 404(t), which exempts the Corps from regulation under the CWA and affiliated state programs. *See In re Operation of the Mo. River Sys. Litig.*, 418 F.3d 915, 918 (8th Cir. 2005).

[4]Concurrent actions in the United States District Court for the District of New Jersey, brought by the State of New Jersey Department of Environmental Protection ("NJDEP") and various public interest groups, seek similar relief. N.J. Civ. No. 09-5591-JAP; N.J. Civ. No. 09-5889-JAP.

motion for a preliminary injunction, allowing the first phase of the Deepening Project in Reach C to proceed, but enjoining the subsequent phases pending a full examination on the merits of DNREC's case. (D.I. 60; D.I. 61; D.I. 63) In preparation for judicial review on the substantive merits of DNREC's claims, the Corps lodged with the court an administrative record containing 48,000 pages of documents that purportedly form the basis for its decision to proceed with the Deepening Project. (D.I. 68) As the basis for its present motion to expand such, DNREC objects to the administrative record to the extent that it allegedly fails to include all of the information relied upon by the Corps in making the impairment finding.

### III. STANDARD OF REVIEW

The APA defines the permissibility and scope of judicial review of agency actions challenged pursuant to its statutory confines. See *FCC v. Fox TV Stations, Inc.*, 129 S. Ct. 1800, 1810 (U.S. 2009). One of a limited few enumerated standards regarding such review provides that

> [t]he reviewing court shall -
>
> > (2) hold unlawful and set aside agency action, findings, and conclusions found to be -
> >
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .

5 U.S.C. § 706(2)(A).

The Supreme Court has consistently maintained that an agency action challenged as arbitrary and capricious is subject to a "narrow" standard of review. See *Fox TV*, 129 S. Ct. at 1810; *see also Motor Vehicle Mfrs. Ass'n. of United States, Inc. v.*

*State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983). In this regard, "a court is not to substitute its judgment for that of the agency . . . ." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (U.S. 1971). Instead, the "reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285 (U.S. 1974) (internal citations omitted).

Judicial review under the APA turns on a consideration of "the whole record or those parts of it cited by a party . . . ." 5 U.S.C. § 706. The "whole record" consists of the full record that was "before the agency" at the time of the decision at issue. *Overton Park*, 401 U.S. at 420. The District Court for the District of Columbia has held that the record "before the agency" includes all documents and materials "directly or indirectly" considered by agency decision-makers. *See Pac. Shores Subdivision Cal. Water Dist. v. United States Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006). Defining the available universe of review in this manner ensures the propriety of the court's inquiry. *Compare Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 57 n. 7 (D.D.C. 2003) (noting that "interpreting the word 'before' so broadly as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless."), *with Walter O. Boswell Memorial Hospital v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case . . . .").

It is the province of the agency to compile and submit the administrative record for review by the court. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). Indeed, "[c]ommon sense dictates that the agency determines what constitutes the 'whole' administrative record because it is the agency that did the considering, and that therefore is in a position to indicate initially which of the materials were before it - namely, were directly or indirectly considered." *Pac. Shores*, 448 F. Supp. 2d at 5 (citations and quotations omitted).

Because courts presume that, "[i]n the absence of clear evidence to the contrary, . . . [public officers] have properly discharged their official duties," *Overton Park*, 401 U.S. at 415, an agency's designation of the administrative record is generally afforded a presumption of regularity. *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). It is for these reasons that supplementation of the administrative record is an exceptional request. *See NVE, Inc. v. Dep't of Health and Human Servs.*, 436 F.3d 182, 189 (3d Cir. 2006); *see also Pac. Shores*, 448 F. Supp. 2d at 5 ("[s]upplementation of administrative record is the exception, not the rule.").

## IV. DISCUSSION

DNREC requests that the court add to the administrative record seventeen documents that it contends the Corps relied upon to make the impairment finding. (D.I. 74) Additionally, DNREC seeks both a declaration that the Corps has not provided a complete administrative record, as well as civil discovery from the Corps beyond the administrative record to ensure its completeness for the purposes of this litigation. (*Id.*)

7

The court addresses each of DNREC's requests in turn.

### A. Identified Documents

DNREC has identified seventeen documents that the Corps allegedly improperly excluded from the administrative record. (D.I. 75, ex. A) According to DNREC, each of these documents is "highly relevant" to the Corps' impairment finding. (D.I. 75 at 12) The Corps concedes that one of these documents is appropriately included in the record. (D.I. 77, ex. A at Tab 3) For ease of analysis, the court partitions the remainder of the documents based on whether the Corps created the document before or after the April 30, 2009 impairment finding.

#### 1. Post-decisional documents

Several of the documents that DNREC seeks to add to the administrative record were created over a span of months after the Corps rendered the impairment finding. (*See* D.I. 77, ex. A at Tabs 9-16) DNREC first argues that these documents are properly included insofar as the commencement of dredging work in Reach C, which began on March 1, 2010, defines the proper cut-off date of the administrative record. The focus of the APA review is, of course, the administrative record that existed at the time of the challenged agency action. See *Overton Park*, 401 U.S. at 420. Accordingly, the legally relevant date for the purposes of this motion is that of the impairment finding. After April 30, 2009, the Corps began to commit resources to its decided course of action. Each subsequently consistent act, including the commencement of dredging work in Reach C, is simply the physical manifestation of the Corps' previously made decision to proceed, to wit, it is post-decisional activity.

8

Next, DNREC argues that the court may consider post-decisional evidence due to the nature of the relief sought by the complaint in this action. DNREC cites to *Salazar v. Buono*, 130 S. Ct. 1803, 1816 (2010), for the proposition that the court must review "current information affecting the propriety of the agency" in connection with a request for injunctive relief. *Salazar*, in which plaintiffs alleged a violation of the Establishment Clause and sought an injunction against the Department of the Interior, did not involve the challenge of an agency action under the APA. *See id.* Accordingly the nature of the requested relief alone does not provide a basis to expand the record in an action brought pursuant to the APA.

Alternatively, DNREC cites to *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989), which describes a list of eight exceptions[5] to the general prohibition against extra-record evidence. As an initial matter, the Third Circuit has not adopted these exceptions. Moreover, courts in the D.C. Circuit sparingly deviate from the general prohibition, refusing to do so when there are no alleged procedural irregularities regarding the challenged agency action. *See Esch*, 876 F.2d at 991; *see also Beverly Enters. v. Herman*, 130 F. Supp. 2d 1, 8 n.2 (D.D.C. 2000). These exceptions do not apply to the situation at bar, which alleges no procedural deficiencies and concerns the substantive merits of the agency's determination. *Esch*, 876 F.2d at 991 ("the familiar rule that judicial review of agency action is normally to be confined to the administrative record . . . exerts its maximum force when the substantive soundness of the agency's decision is

---

[5] The exceptions to the general prohibition include "cases where evidence arising after the agency action shows whether the decision was correct or not," and "cases where agencies are sued for failure to take action," and "cases where relief is at issue." *Id.* at 991.

9

under scrutiny").

## 2. Pre-decisional documents

It is undisputed that the Corps created the remainder of the documents at issue prior to the date of the impairment finding. The Corps maintains that it properly withheld these documents, which concern internal communications and meeting notes, on grounds of the deliberative process privilege.

### a. Deliberative process privilege

The deliberative process privilege is derived from the accepted impropriety of delving into an agency's mental process.[6] *See, e.g., United States v. Morgan*, 313 U.S. 409, 422 (1941); *Norris & Hirshberg, Inc. v. S.E.C.*, 163 F.2d 689, 693 (D.C. Cir. 1947). Allowing judicial review of an agency's deliberative proceedings distorts the inquiry under the APA, which should be focused "upon an agency's stated justifications, not the predecisional process that led up to the final, articulated decision." *Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d 134, 143 (D.D.C. 2002) (internal citations omitted). Additionally, introducing these materials into the record would contravene the ability of an agency to engage in uninhibited and frank discussions of agency matters. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (U.S. 1975).

DNREC advances several arguments as to why the court should not allow the Corps to invoke the deliberative process privilege to shield documents at issue. As a general matter, DNREC alleges that the Corps has failed to carry its burden of demonstrating that the documents are both predecisional and deliberative. *See*

---

[6]The deliberative process privilege is codified in 5 U.S.C. § 552(b)(5) as exemption five of FOIA.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Predecisional documents are those existing "antecedent to the adoption of an agency policy." *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978). Insofar as the identified documents were created prior to the impairment finding, there can be no serious challenge to their predecisional nature. Courts have interpreted the deliberative prong to require that the communication forms "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). In other words, purely factual matters remain unprivileged. *See EPA v. Mink*, 410 U.S. 73, 91 (1973). The Corps' appendix describes the privileged materials as internal communications, meeting notes and non-final drafts of memoranda. (D.I. 77, ex. A) Each of these categories falls within the ambit of traditionally privileged materials. *See, e.g. Center for Auto Safety v. Federal Highway Admin.*, 956 F.2d 309, 314 (D.C. Cir. 1992). Additionally, DNREC concedes the deliberative and non-factual nature of the materials at issue by claiming that the documents are "probative of [the Corps'] mindset culminating in the [impairment finding]," and "provide a frank evaluation of [the Corps'] obligation to obtain the Delaware permits in question." (D.I. 75 at 7; D.I. 79 at 6)

### b. Waiver

All of the documents at issue were voluntarily produced by the Corps pursuant to a Freedom of Information Act ("FOIA") request made by NJDEP and other public interest groups. Because these documents now exist in the public domain, DNREC argues that the Corps has waived any claim for deliberative process privilege. In

support of this argument, DNREC cites to several cases which purportedly hold that waiver of privilege occurs as a result of public disclosure. *Fireman's Fund Indem. Co. v. United States*, 103 F. Supp. 915, 916 (D. Fla. 1952) (denying Secretary of Navy's assertion of a general privilege with respect to previously disclosed documents which contained all of the evidence pertaining to the accident at issue); *Peck v. United States*, 514 F. Supp. 210, 213 (S.D.N.Y. 1981) (concluding that voluntary disclosure waives qualified official information privilege and requires such documents to be produced); *O'Keefe v. Boeing Co.*, 38 F.R.D. 329, 334 (S.D.N.Y. 1965) (holding that considerations of fairness play into the question of waiver).

At most, these cases demonstrate that agencies cannot, irrespective of any claims of privilege, avoid the production of previously disclosed documents; however, the court remains unconvinced that any such waiver necessarily mandates the addition of such documents to the administrative record. A FOIA production request is an entirely discrete legal concept that bears no relation to the administrative record compiled for a court's review under the APA. Moreover, requiring the addition of voluntarily disclosed deliberative materials to the administrative record runs afoul of an important policy underlying the deliberative process privilege, to wit, that "officials should be judged by what they decided[,] not for matters they considered before making up their minds." *Jordan*, 591 F.2d at 772-73; *see also Ad Hoc Metals*, 227 F. Supp. 2d at 143 (judicial review under APA is concerned with "an agency's stated justifications, not the predecisional process that led up to the final, articulated decision."). Accordingly, the FOIA production of the documents at issue did not result in a waiver of privilege transforming these deliberative materials into proper constituents of the

administrative record.

### c. Evidentiary need for privileged material

Despite the applicability of the privilege, DNREC asserts that its evidentiary need outweighs any harm that would occur should the deliberative materials become part of the administrative record. *See Redland Soccer Club v. Department of the Army*, 55 F.3d 827 (3d Cir. Pa. 1995). *Redland* involved a class action suit in which plaintiffs brought claims under the Federal Tort Claims Act and the Comprehensive Environmental Response, Compensation, and Liability Act against the United States Army. The United States Army refused to produce multiple documents upon grounds of deliberative process privilege. *Id.* at 853. In balancing the parties' respective interests regarding the documents, the Third Circuit adopted a test enunciated by the D. C. Circuit, which considers:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.* at 854.

Notwithstanding that *Redland* involved a request for production and not for an expansion of the administrative record, the court finds that DNREC has failed to demonstrate the relevance of the deliberative materials at issue. As previously mentioned, DNREC brought its claims under the APA alleging, inter alia, that the Corps' impairment finding was arbitrary and capricious. Under this "narrow" standard of review, the Corps must demonstrate a "rational connection between the facts found and

13

the choice made." *Motor Vehicles*, 463 U.S. at 43. Documents tending to show the Corps' "mindset" or its understanding of the permitting obligations with respect to the Deepening Project do not facilitate this inquiry, which is unconcerned with the actual subjective motivation of the agency. *See New York v. Salazar*, 2010 WL 1268018, at *9 (N.D.N.Y Apr. 1, 2010). As the deliberative materials bear no relevance to the court's role in reviewing the merits of this case under the APA, the court finds no reason to abrogate the Corps' privilege.

### B. Integrity of the Administrative Record

Alternatively, DNREC seeks a declaration that the Corps submitted an incomplete administrative record. The Corps' administrative record, as submitted, is entitled to a strong presumption of regularity. *See, e.g., Bar MK*, 994 F.2d at 740. The Third Circuit allows supplementation in only two scenarios: (1) where the record does not demonstrate the factors considered by the agency; or (2) where a showing of bad faith in agency decision-making is made. *Horizons Int'l, Inc. v. Baldrige*, 811 F.2d 154, 162 (3d Cir. 1987); *NVE, Inc.*, 436 F.3d at 195.

DNREC does not allege that the record does not demonstrate the factors considered by the Assistant Secretary in making the impairment finding. With respect to the second exception, DNREC alleges that the missing documents "highlight the process the Corps undertook to formulate its legal justifications for avoiding a Delaware permit" and that "the Corps held this position in reserve and only asserted it after 'increasing its efforts . . . to persuade the State to issue the [permit],' and after DNREC denied the permit in July 2009." (D.I. 75 (citing ex. A, Tab 13)) That the Corps

14

developed a contingency position after waiting indefinitely for action on its permit application is hardly indicative of bad faith. Having failed to create a prima facie case for either of the exceptions described *supra*, the court concludes that DNREC has not overcome the presumption of regularity associated with the administrative record.

### C. Availability of Discovery

The Third Circuit observes a strong presumption against discovery in APA cases, allowing it only upon a showing of agency bias. *NVE, Inc.*, 436 F.3d at 195. DNREC has not asserted, nor can the court discern, any instance of bias on the part of the Corps. Moreover, the size of the submitted record is relevant to whether discovery is appropriate. *Id.* at 196. The Corps has submitted an extensive administrative record containing approximately 48,000 pages. Finally, DNREC's assertion that the Corps created the record in bad faith is belied by the Corps' willing production of its entire file on the Deepening Project in response to the FOIA request. DNREC has not demonstrated the propriety of discovery in this case.

### V. CONCLUSION

In view of the foregoing, DNREC's motion to expand the administrative record is denied. An appropriate order will follow.